GEORGF N. GERHARD·et al., respondents,

*v.*

BENJAMIN L. WELSH et al., appellants.

[Argued November 27th, 1911.   Decided March 6th, 1912.]

1. The directors of a building and loan association, organized under the general law (*Gen. Stat. p. 331*) and having a constitution empowering its directors to loan its funds to others than shareholders on undoubted security, are not authorized to purchase outright shares in a manufacturing corporation, such purchase being in no sense a loan.

2. The exercise of the power to purchase and hold stocks of other corporations conferred by section 51 of "An act concerning corporations," Revision 1896 (*P. L. 1896 p. 294; 2 Comp. Stat. p. 1633*) as an incidental power is not necessary or convenient for the attainment of the objects for which a building and loan association created under the general law (*Gen. Stat. p. 331*) is organized.

· 3. From equivocal circumstances positive affirmance by shareholders of unauthorized acts of directors will not be inferred, and prompt disaffirmance is unnecessary and mere delay by the shareholders in bringing suit, which has not occasioned loss or prejudice to the defendants, does not raise an estoppel and will not deprive the complainants of their remedy.

On appeal from a decree of the court of chancery advised by Vice-Chancellor Stevens.

The bill in this case was filed August 24th, 1905, by George N. Gerhard and twenty-one others, stockholders of the Millstone Building and Loan Association of East Millstone, New Jersey, in behalf of themselves and all other stockholders, against said association and also Benjamin L. Welsh and others, directors thereof, for the purpose of requiring the directors to make good to said association the amount which had been invested by them in the purchase of twenty-five shares of the preferred capital stock of the Somerville Woolen Mills, a manufacturing corporation of this state.

Two purchases of this stock are charged, the first about the 1st

day of January, 1896, of ten shares for $1,000. The second, about the 1st of November, 1896, of fifteen shares for $1,500.

The Somerville Woolen Mills, in September, 1904, was placed in bankruptcy, and in such proceedings, its property being sold, the net proceeds were not sufficient to pay its creditors in full, so that the stockholders sustained a total loss.

The stock at the time of its purchase was intended to pay six per cent. non-cumulative dividends, and such dividends were in fact paid from that time to and including July, 1901, when they ceased. In March, 1902, the directors considered that the loan stock had matured by attaining the value of $200 per share, and discontinued receiving from the shareholders further monthly installments. One hundred and eighty-seven dollars and fifty cents had been paid upon each share, the difference necessary to make up $200 being represented by the shares of the woolen mills stock. No further settlement has been made with the shareholders of the association, owing to the inability to realize anything upon the stock.

Edward V. H. Voorhees, one of the directors in office at the time of said purchase, died about April 1st, 1898. Another, Arthur Thomas, removed from the state and ceased to be a director soon after the purchase of stock, and has since died. The places of these two directors, after the purchases had been made, were filled by Peter Sutphen and Peter Garretson, who, with the five survivors of the original directors, are sought to be held liable.

The final decree adjudges that the defendants, the survivors of the directors who were in office at the time of the making of the investments, and the estates of Edward V. H. Voorhees, Arthur Thomas and Benjamin L. Welsh, then directors, who have since died, shall make good to the Millstone Building and Loan Association the moneys so improperly and unlawfully paid for said stock, together with interest thereon from July 1st, 1901, amounting in the whole to $4,061.64, but that the defendants, Peter Sutphen and Peter Garretson, who became directors after the purchase of said shares of stock, are not liable.

From this decree appeal has been taken by the surviving directors only.

*Mr. John F. Reger,* for the appellants.

*Mr. George E. Pace* and *Mr. Alan H. Strong,* for the respondents.

The opinion of the court was delivered by

VOORHEES, J.

The question involved in this appeal concerns the personal liability of directors of a building and loan association for losses arising from an investment, of the funds of the association in the stock of a manufacturing corporation. The insistence is that the purchase of such shares is not allowed by law.

The association was organized April 1st, 1890, under the general act then in force. *Gen. Stat. p. 331.* The same directors originally elected continued in office by re-elections until 1895, with the exceptions noted in the foregoing statement of facts.

Section 8 of the act above cited (*Gen. Stat. p. 333*) directs that

"every company formed * * * shall adopt a constitution. * * * The investments of every such association shall be made either in loans to, or a redemption of the shares of, or in purchasing lots and erecting dwellings for the members or in all of said modes, *or in such other ways as the constitution of the particular association shall provide.*"

The constitution of this association did provide another way for the investment of the funds, as follows:

"In the event of the funds of the association lying unproductive, the directors are empowered to loan them to shareholders and others than shareholders, on undoubted security."

Without at this point stopping to determine whether a manufacturing stock was a proper investment for the funds of an association of this character, we pass at once to consider the limitations imposed by the statute and the constitution, adopted under it, upon the directors in rendering the funds productive.

To purchase a security is one thing; to loan upon security is quite another. In the former transaction, title is taken to the thing bought; in the latter, it is given with a promise of repay-

ment, made sure not only by such promise of repayment involving the personal responsibility of the promisor, but as well by the "undoubted security" exacted by the constitution, and reasonably to be expected to be accepted at a part only of its actual value.

The learned vice-chancellor in the court below thus tersely puts it:

"Now, what they did was, not to loan on undoubted security, but to purchase an industrial stock—an altogether different thing—different for the reason that I have pointed out, and different also for the reason that on such a stock the loan would ordinarily be made not up to its full market value, but for a lesser sum. Either way you look at it the distinction is not a technical one, but real and substantial. It cannot be the law that directors, directed by statute as to what they may do, may go beyond that statute and do something else which results in loss."

We, therefore, conclude that the directors of a building and loan association, organized under the general law (*Gen. Stat. p. 331*), and having a constitution empowering its directors to loan its funds to others than shareholders on undoubted security, are not authorized to purchase outright shares in a manufacturing corporation, such purchase being in no sense a loan.

Liability will result from unauthorized acts under such circumstances, although willful wrong-doing is not intended. *Cook Stock. (3d ed.)* ¶ *682; Citizens' Building and Loan Association v. Coriell, 34 N. J. Eq. (7 Stew.) 383; Williams v. McKay, 46 N. J. Eq. (1 Dick.) 25, 26.*

But it is argued that the purchase of stock made in November, 1896, was not contrary to law and in the absence of fraud or gross negligence, the directors should not be held liable. It is asserted that the defendants were careful in their inquiries about the standing and financial strength of the woolen company, that in their judgment founded upon such investigation, the shares were a safe and productive investment, and one which, under the "Act concerning corporations," Revision of 1896 (*P. L. 1896 p. 277*), which went into effect July 4th, 1896, the association was authorized to purchase and hold.

Particular reference is made to section 51 of that act which reads as follows:

"Any corporation may purchase, hold, sell, assign, transfer, mortgage, pledge or otherwise dispose of the shares of the capital stock or any bonds, securities or evidences of indebtedness created by any other corporation or corporations of this or any other state, and while owner of such stock may exercise all the rights, powers and privileges of ownership including the right to vote thereon." *P. L. 1896 p. 294.*

The difference between this section and the supplement of 1893 (*P. L. 1893 p. 301*) is pointed out, namely, that the latter was limited in its application to corporations created under the General Corporation act, while in the former, such limitation has been omitted, whereby additional powers are conferred.

We are unable to give our assent to the argument that this enactment conferred upon the association power to purchase and hold the stock in question.

This court has declared concerning this legislation, that the power thus conferred primarily exists only when the purpose to exercise it is expressed in the certificate of incorporation, and that its incidental existence depends upon whether its exercise is necessary or convenient to enable the holding corporation to attain the objects for which it was created. *State* v. *Atlantic City and Shore Railroad Co., 77 N. J. Law (48 Vr.) 465.*

The certificate does not and could not express the purpose to exercise the power, and it is not perceived how its exercise as an incidental power is either necessary or convenient for the attainment of the objects for which the loan association was organized. The holding of shares in a manufacturing business corporation is quite apart from the objects expressed in the general act under which the defendant in this case was organized.

It is lastly urged that because of acquiescence in the acts of the directors in the purchase of these shares, and ratification of them by the stockholders, the complainants are not entitled to relief.

Acquiescence and ratification are founded upon knowledge of the facts brought home to the parties to be bound. Proof that annual statements were issued by the directors from the years 1897 to 1902, both inclusive, and circulated among the stockholders, showing that these shares were carried as assets of the association, and that the same directors were, in the face of these statements, continued in office by annual elections by the stock-

holders, has been · adduced· upon this point to show such knowledge.

Moreover, it is said that no complaint was ever received from a stockholder while the woolen mills paid dividends. Protests came when the dividends ceased.

These annual statements were not explicit. They varied in each year. In those of the first two years, the item is "Somerville Woolen Mills Stock $2,500." In the next two, "Loaned on Stock $2,500." In the fifth, "Woolen Mills Stock $2,500," and in the last, "Loaned on Stock $2,500."

Those of the statements which indicate that the shares are held by the association, are not inconsistent with the idea that the stock might have been pledged to it and so acquired, while those which state that a loan had been made are untruthful.

From these equivocal circumstances positive affirmance will not be inferred, and prompt disaffirmance by the shareholders was unnecessary, and mere delay on their part in bringing suit, which has not occasioned loss or prejudice to the defendants, does not raise an estoppel, and will not deprive the complainants of their remedy. *Tynan* v. *Warren, 53 N. J. Eq. (8 Dick.) 313; Holzer* v. *Thomas, 69 N. J. Eq. (3 Robb.) 515; Lutjen* v. *Lutjen, 64 N. J. Eq. (19 Dick.) 773; Lowrey* v. *Hawaii, 215 U. S. 554.* The appellants on this point cannot prevail.

The amount of the decree does not seem to be incorrect.

The decree will be affirmed.

*For affirmance*—GARRISON, SWAYZE, PARKER, BERGEN, VOORHEES, KALISCH, VREDENBURGH, VROOM, CONGDON, WHITE—10.

*For reversal*—None.